# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

FEDERAL INSURANCE COMPANY,

           Plaintiff,

  v.

SPEEDBOAT RACING LTD.,

           Defendant/Third Party Plaintiff,

  v.

RAMBLER 100 LLC,

           Third Party Defendant .

Case No. 3:12-cv-1480 (CSH)

JANUARY 23, 2017

## RULING ON SPEEDBOAT['S] AND JACKSON'S MOTION FOR LEAVE TO AMEND ANSWER [Doc. 75]

**HAIGHT, Senior District Judge:**

## I.  BACKGROUND

In this vehemently litigated admiralty action, the current litigants, Speedboat Racing Ltd. ("Speedboat"), Alexander E. Jackson, and Rambler 100 LLC ("Rambler") dispute which party is liable for damages to the yacht formerly known as "SPEEDBOAT" (the "Yacht"), a majestic and "highly sophisticated racing sloop, 30 meters long," which was "designed by Juan Kouyoumdjian of Juan Yacht Design and built by T.P. Cookson Boatbuilders Ltd."[1]  Doc. 20 (Speedboat's

---

[1]  As the Court stated in its prior "Omnibus Ruling," the media has reported that the Yacht was reborn and relaunched as "Perpetual Loyal" and resumed racing.  *Fed. Ins. Co. v. Speedboat Racing Ltd.*, No. 3:12-CV-1480 (CSH), __F. Supp. 3d __, 2016 WL 4250222, at *27, 95 Fed. R. Serv. 3d 766 (D. Conn. Aug. 9, 2016) (citing, *inter alia*, http://www.sailingscuttlebutt.com/

"Amended Third Party Complaint"), at 3 (¶ 8).  Speedboat,  Jackson (Speedboat's "Director"), and Rambler entered into a "Share Issuance and Shareholder Agreement" (the "Agreement") on October 14, 2010, which provided that Rambler would have exclusive use of the Yacht in the 2011 Atlantic Ocean Racing Series and be responsible to pay "all operating expenses, repair and maintenance costs for the Yacht and its Equipment, including minor maintenance or major equipment failure incurred during the Term and after redelivery."[2] Doc. 10-3 ("Exhibit C, Lease Agreement, dated October 14, 2010), at 5 (§ 4.1(a)).

Pursuant to its terms, the Agreement was to be "governed by and construed in accordance with the laws of the State of Connecticut."  *Id.*, at 10 (§ 5.4).  The Agreement provided Rambler with an ownership interest in Speedboat ("one (1) redeemable share of a nominal par value of U.S. $1.00"), *id.*, at 2 (Preamble), and exclusive use of the Yacht from October 14, 2010, to March 15, 2012, for the purpose of racing the Yacht in the Atlantic Ocean Racing Series, *id.*, at 4 (§ 4.1).

On August 15, 2011, Rambler raced the Yacht in the 2011 Rolex FastNet Race off the coast of Ireland. Doc. 20 (Speedboat's "Amended Third-Party Complaint"), at 5 (¶ 21).  During the course of that race, "[f]acing 23-25 knot headwinds in heavy seas, the Yacht's canting keel snapped off just below the hull exit, whereupon the Yacht capsized, resulting in millions of dollars of damage to the Yacht."[3]  *Id.*

---

2016/01/48454/; http://www.rolexsydneyhobart.com/the-yachts2015/perpetual-loyal/).

[2] The Court notes that Speedboat refers to the Agreement throughout its pleadings as the "Lease Agreement," stating that it "provides for, among other things, Rambler's lease of the Yacht and other related assets of Speedboat."  *See, e.g.*, Doc. 10, at 2 (¶ 2) and at 3 (¶ 8);   Doc. 20, at 2 (¶ 2) and at 3 (¶ 7).

[3] Rambler described the part of the Yacht that "broke off" during the 2011 Rolex Fastnet Race as the "keel fin." Doc. 48, at 4.  The parties do not dispute the facts regarding the nature of the

Consequently, Speedboat submitted a claim to its insurer, Federal Insurance Company ("Federal"), for the damages to the Yacht's "sails, mast, spars and rigging in the amount of $3,130,000.00." Doc. 1, at 3 (¶ 15). Federal denied the claim by letter dated October 12, 2012, and commenced the present action against Speedboat. *Id.*, at 4 (¶ 17). In particular, Federal filed a "Complaint in Admiralty" [Doc. 1] seeking declaratory judgment pursuant to 28 U.S.C. § 2201 that, pursuant to the terms of the $5 million marine insurance policy on the Yacht, Federal had no duty to pay Speedboat for the damages that occurred to the Yacht on August 15, 2011. Federal argued that said damages were explicitly excluded from coverage under the following provision of the Policy:

> "Spars and Sails." We do not cover any loss to spars running or standing rigging, sail, spinnakers or gennakers that occurs while your yacht is being raced.

Doc. 1, at 1 (¶ 1).

Federal explained that the damages in question occurred "[d]uring a race" when "the keel failed and the Yacht immediately heeled over," causing the mast and sails to break off and suffer damage. *Id.* Therefore, Federal requested "a declaratory judgment claiming that it ha[d] no duty to pay the damages for the mast and sails because they were damaged while the Yacht was being raced[,] which loss is excluded under the [P]olicy." *Id.*

Speedboat answered the Complaint [Doc. 8] and filed a Third-Party Complaint [Doc. 10] against Rambler, alleging that Rambler had breached the Agreement. Speedboat thereafter filed an "Amended Third-Party Complaint" [Doc. 20] pursuant to Federal Civil Rule 15(a)(1)(B), as a

---

damage to the Yacht.

"matter of course."[4]  In that pleading, Speedboat asserted that "if Plaintiff [Federal was] held to be not responsible to pay Speedboat on its claim for damages to said 'spars and sails,' this Court should enter a judgment that Rambler is liable to and must pay Speedboat for such damages pursuant to the terms of the Share Issuance and Shareholder Agreement" between Speedboat, Jackson, and Rambler. Doc. 20, at 2 (¶ 2) & Ex. C.

On August 9, 2016, this Court entered an "Omnibus Ruling," 2016 WL 4250222, resolving a number of matters in the case.  The Ruling approved the joint stipulation of discontinuance [Doc. 43] filed by Federal and Speedboat, which discontinued Federal's action against Speedboat, effectively removing Federal as plaintiff.  In addition, the Ruling denied Speedboat's motion to dismiss for lack of subject matter jurisdiction [Doc. 44], holding that this Court possesses admiralty jurisdiction over the pending claims relating to the Agreement pursuant to 28 U.S.C. § 1333.  Next, the Ruling granted Rambler's motion to amend or correct its answer and counterclaims [Doc. 46], which included leave to add Jackson as a party.  The Court found that the addition of Jackson as a party was not only "permissible," but likely "required, in light of his participation as a party to the Agreement." Doc. 61, at 52.  Finally, the Court denied as moot Speedboat's motion to stay discovery [Doc. 52], and denied without prejudice Rambler's motion to compel discovery [Doc. 57].

On August 26, 2016, Rambler filed its "Second Amended Answers and Counterclaims to Speedboat's Amended Third-Party Complaint" [Doc. 62].  Five days later, Rambler filed a "Third-Party Complaint" against Jackson [Doc. 63]. On September 16, 2016, Speedboat and Jackson filed

---

[4]  Speedboat filed its Amended Third-Party Complaint on January 4, 2013, which was within twenty-one (21) days after Rambler filed its responsive pleading ("Answer") [Doc. 17] to Speedboat's original Third-Party Complaint, on December 14, 2012. *See* Fed. R. Civ. P. 15(a)(1)(B) ("A party may amend its pleading once as a matter of course . . . if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading . . . .").

Answers to Rambler's Second Amended Counterclaims and Third-Party Complaint [Doc. 70].

## II.  PENDING MOTION

At present, Speedboat and Jackson move, pursuant to Rule 15(a)(2) of Civil Procedure, for leave to amend their Answers [Doc. 70] to Rambler's Second Amended Counterclaims and Third-Party Complaint [Doc. 63] to assert additional affirmative defenses.  Their proposed defenses include: "(i) the Yacht was delivered in a safe and seaworthy condition to Rambler, the pro hac vice owner under the Lease Agreement (Twelfth Affirmative Defense); (ii) inapplicability and/or waiver of the implied warranty of seaworthiness (Thirteenth Affirmative Defense); and (iii) preemption of the [attorney's fees and punitive damages provisions of the] Connecticut Unfair Trade Practices Act by federal admiralty law (Fourteenth Affirmative Defense)."  Doc. 75, at 1-2.

In support of their motion, Speedboat and Jackson state that the "proposed amendment is timely," they "have a good faith basis for asserting their additional affirmative defenses that is not futile, and their proposed amendments will not delay resolution of the dispute or otherwise harm Rambler."  *Id.,* at 2.  In addition, movants Speedboat and Jackson represent that Rambler "does not oppose" their motion for leave to amend.  *Id.*

## III.  DISCUSSION

### A.   Standard to Amend Pleadings - Rule 15(a), Fed. R. Civ. P.

In general, a party may amend its pleading once as a matter of course within 21 days after serving it.[5]   In the case at bar, although this is Speedboat's and Jackson's first motion to amend their

---

[5]  Rule 15(a), Fed. R. Civ. P., provides:

(1) *Amending as a Matter of Course.* A party may amend its pleading once as a

Answers, the motion was filed on January 13, 2017 – more than twenty-one (21) days after they filed

their Answers [Doc. 70], on September 16, 2016.  They thus bring their motion to amend under Rule

15(a)(2), Fed. R. Civ. P., which provides that "a party may amend its pleading only with the

opposing party's written consent or the court's leave" and "[t]he court should freely give leave when

justice so requires."[6]   Speedboat and Jackson represent that they have obtained Rambler's consent

to amend but they have submitted no written proof from Rambler of that consent;  so they must seek

the Court's leave.

In *Foman v. Davis*, 371 U.S. 178, 182 (1962), the United States Supreme Court articulated

the relevant standard for a court to determine whether to grant a party's request to amend his or her

pleading under Federal Civil Rule 15(a).  In particular, the *Foman* court stated:  "In the absence of

any apparent or declared  reason – such as undue delay, bad faith or dilatory motive on the part of

the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice

to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the

leave sought should, as the rules require, be 'freely given.'"  371 U.S. at 182.  "Of course, the grant

---

matter of course within:

> (A) 21 days after serving it, or

> (B) if the pleading is one to which a responsive pleading is required,
> 21 days after service of a responsive pleading or 21 days after service
> of a motion under Rule 12(b), (e), or (f), whichever is earlier.

[6]  With respect to  amendments  other  than those which may be made a matter of course,
Rule 15(a)(2), Fed. R. Civ. P., provides:

> (2) *Other Amendments.* In all other cases, a party may amend its pleading only with
> the opposing party's written consent or the court's leave. The court should freely give
> leave when justice so requires.

or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Id.*

To date, the Second Circuit consistently applies *Foman* with respect to motions to amend. *See, e.g., Klein v. PetroChina Co.*, 644 F. App'x 13, 15 (2d Cir. 2016) (quoting *Foman* standard for granting leave to amend or supplement pleadings); *Shatney v. LaPorte*, 634 F. App'x 53, 55 (2d Cir. 2016) ("Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'") (quoting *Foman*, 371 U.S. at 182). *See also Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 109 (2d Cir. 2014) ("The Federal Rules provide that courts 'should freely give leave [to amend] when justice so requires'" and "[i]n the absence of any apparent or declared reason . . . such as undue delay, bad faith or dilatory motive on the part of the movant . . . [or] undue prejudice to the opposing party by virtue of allowance of the amendment . . . the leave sought should, as the rules require, be 'freely given.'") (quoting *Foman,* 371 U.S. at 182); *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) ("When a party requests leave to amend his complaint, permission generally should be freely granted.") (citing *Foman*, 371 U.S. at 182); *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) ("Leave to file an amended complaint 'shall be freely given when justice so requires,' Fed. R. Civ. P. 15(a), and should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility."); *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995) ("Absent undue delay, bad faith,

7

dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility, the motion [to amend] should be freely granted.") (quoting *Foman*, 371 U.S. at 182).

Applying the *Foman* standard to the case at bar, there is no evidence that the proposed amendments are the product of undue delay, bad faith, a dilatory motive, or repeated failure to cure deficiencies by amendment. Under the current scheduling order in this case [Doc. 74], the parties were allowed to file motions to amend the pleadings by January 17, 2017; and the present motion was filed on January 13, 2017. Speedboat and Jackson thus brought this first motion to amend in a timely manner, without any demonstration of bad faith or dilatory motive.

Moreover, there is no indication that Rambler will suffer "undue prejudice" should the amendments be allowed. Rather, the movants state that Rambler "does not oppose" the amendments. Therefore, the only remaining *Foman* issue to be examined is the possibility of "futility" of the proposed amendments.

With respect to futility, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (citing *Foman*, 371 U.S. at 182). *See also Health–Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990) ("where . . . there is no merit in the proposed amendments, leave to amend should be denied"); *Albany Ins. Co. v. Esses*, 831 F.2d 41, 45 (2d Cir. 1987) ("the district court may deny leave to replead if the proposed amendments would be futile").

For example, "[a]n amendment is considered 'futile' if the amended pleading fails to state a claim or would be subject to a successful motion to dismiss on some other basis." *Faryniarz v.*

*Ramirez*, 62 F. Supp. 3d 240, 249 (D.Conn. Dec. 1, 2014) (collecting cases).[7]   A proposed

amendment would be futile if it  "destroyed the Court's subject matter jurisdiction, failed to state a

claim, or asserted claims which are time-barred by the relevant statutes of limitation." *Id.* at 249-50

(citing *Taurus B, LLC v. Esserman*, No. 3:14cv715 (CSH), 2014 WL 4494398, at *2 (D. Conn. Sept.

12, 2014)).

     In the Second Circuit, "an affirmative defense may be deemed 'futile' where it is either clearly

'meritless' based on the well-pleaded factual allegations contained within the pleadings or would

have no impact on the outcome of the action itself." *Tavares v. Lawrence & Mem'l Hosp.,* No. 3:11-

CV-770 (CSH), 2013 WL 1385266, at *3 (D.Conn. April 3, 2013) (collecting cases).[8]   Furthermore,

as this Court has previously stated, "[a] party opposing a motion for leave to amend has the burden

of proving that such amendment is futile."   *Id.* (quoting *Schaghticoke Tribal Nation v. Norton*,

06cv81 (PCD), 2007 WL 867987, at *11 (D. Conn. Mar. 19, 2007)). *See also  Sokolski v. Trans*

*Union Corp.*, 178 F.R.D. 393, 396 (E.D.N.Y. 1998) ("The party opposing such amendment had the

burden of establishing that leave to amend would be prejudicial or futile."); *Harrison v. NBD Inc.*,

---

[7]   *See S.S. Silberblatt, Inc. v. East Harlem Pilot Block*, 608 F.2d 28, 42 (2d Cir.1979); *Freeman v. Marine Midland Bank–New York,* 494 F.2d 1334, 1338 (2d Cir.1974). *See also Wilson–Richardson v. Regional Transit Serv., Inc*., 948 F. Supp.2d 300, 306 (W.D.N.Y. 2013) ('I conclude that no amendment of the complaint would be sufficient to salvage claims which are undisputedly unexhausted and untimely, and/or over which the Court lacks jurisdiction").

[8]   *See, e.g., Quanta Specialty Lines Ins. Co. v. Investors Capital Corp.*, 403 F. App'x 530, 532–33 (2d Cir.2010) (holding proposed amendment to add affirmative defense futile, and thus disallowed, where there were be "the same outcome" in the action regardless of whether amended defense were allowed); *Monahan  v. New York City Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir.2000) (noting that leave to amend an answer may be denied on the grounds of "futility"), *cert. denied*, 531 U.S. 1035 (2000).

990 F. Supp. 179, 185 (E.D.N.Y. 1998) (same); *Panzella v. Skou*, 471 F. Supp. 303, 305 (S.D.N.Y.1979) ("Since plaintiff has failed to demonstrate that prejudice would result from such amendment, defendant's motion to amend its answer to assert the affirmative defense of assignment of this cause of action to the employer is granted.").

The Court will examine the proposed amendments to Speedboat's and Jackson's Answers to determine whether they would be "futile.""An amendment is not futile if the claim it seeks to assert is 'colorable and not frivolous.'" *Zoll v. Jordache Enterprises Inc.,* No. 01 CIV. 1339 (CSH), 2002 WL 485733, at *4 (S.D.N.Y. Mar. 29, 2002) (citing *Sumitomo Elec. Research Triangle, Inc. v. Corning Glass Works,* 109 F.R.D. 627, 628 (S.D.N.Y. 1986)).

## B.  Proposed Affirmative Defenses

In the pending motion, Speedboat and Jackson present three proposed affirmative defenses: (i) the Yacht was delivered in a safe and seaworthy condition to Rambler, the pro hac vice owner under the Lease Agreement (Twelfth Affirmative Defense); (ii) inapplicability and/or waiver of the implied warranty of seaworthiness (Thirteenth Affirmative Defense); and (iii) preemption of the Connecticut Unfair Trade Practices Act by federal admiralty law (Fourteenth Affirmative Defense). As Speedboat and Jackson assert, each of these defenses is not futile based on the factual allegations in the pleadings and under applicable admiralty law.

First, in their proposed "Twelfth Affirmative Defense," Speedboat and Jackson allege that they delivered the Yacht to Rambler in "a safe and seaworthy condition" almost ten months before the fracture of the Yacht's keel fin and that Rambler was the "pro hac vice owner of the Yacht" under the Lease Agreement, "which was a demise or bareboat charter." Doc. 75-1, at 48 (¶ 110).  Because Rambler had "complete and exclusive possession, control, and navigation of the vessel at the time

10

of the incident [the August 15, 2011]," Speedboat and Jackson assert that "[n]one of the losses sustained by Rambler resulted from any act or failure on [their] part." *Id.*

Speedboat and Jackson are correct that there is precedent to support the proposition that a yacht's owner who charters a vessel to a pro hac vice owner under a lease agreement, "is generally only liable where the injury results from unseaworthiness . . . which existed prior to the delivery of the vessel to the demise charterer." *In re Marine Sulphur Queen*, 460 F.2d 89, 100 (2d Cir. 1972) (citing *Cannella v. Lykes Bros. S. S. Co.*, 174 F.2d 794, 796 (2 Cir. 1949)) (Hand, *C.J.*), *cert. denied*, 338 U.S. 859 (1949)). *See also Gabarick v. Laurin Maritime (America), Inc.*, 900 F.Supp.2d 669, 674 (E.D. La. 2012) (owner pro hac vice of a chartered vessel "is responsible for navigation errors by its crew and seaworthiness of the vessel"), *aff'd*, 551 F. App'x 228 (5th Cir. 2014); *Kennedy v. Weeks Marine, Inc.*, 853 F. Supp. 643, 644 (E.D.N.Y. 1994) ("In a bare boat charter, the shipowner relinquishes and the charterer gains possession and control of the chartered vessel [and] [a]ccordingly, a bare boat charterer is considered the owner of the vessel pro hac vice;" therefore, the shipowner has an obligation to provide the charterer "with a safe and seaworthy vessel at the outset of the charter term" but is not liable for unsafe conditions that arise after it is no longer "in any position to correct the situation.").

In light of such case law, Speedboat's and Jackson's allegations in their "Twelfth Affirmative Defense" — asserting that they delivered the Yacht in a safe and seaworthy condition to demise charterer Rambler – may constitute a "colorable" affirmative defense to damages claims arising from unseaworthiness that developed during the charter (*i.e.*, after delivery of the vessel to

11

Rambler).[9]  In so finding, the Court makes no determination on the merits or strength of such a defense, but rather holds it not futile on its face.  For example, there  remains a disputed issue of fact as to whether the Yacht was actually "in a safe and seaworthy condition" at the time it was delivered to Rambler.

Second, in their proposed "Thirteenth Affirmative Defense," Speedboat and Jackson allege that Rambler waived the implied warranty of seaworthiness.  Doc. 75-1, at 48 (¶ 111).  Specifically, they claim that "[u]nder section 4.1(c) of the Lease Agreement, the parties agreed that Speedboat and Jackson would deliver the Yacht in 'ship shape, sailable racing condition,' and Speedboat and Jackson represented that, 'to the best of their respective knowledge, [they were] aware of no conditions, flaws, damages or defects (latent or otherwise) of the Yacht which would render or cause the Yacht not to be in ship shape, sailable racing condition.' " *Id.*, at 48-49 (¶ 111).  Under that provision, Rambler had the right to examine the Yacht to confirm its condition and to either accept delivery or terminate the Agreement.  *Id.*, at 48 (¶ 111).  Consequently, Speedboat and Jackson argue that the Agreement did not impose liability on them for "latent defects of which they were not aware."  *Id.*  In other words, the "implied warranty of seaworthiness is inapplicable and/or was waived" by Rambler with respect to such defects.  *Id.*

---

[9]  *Cf. In re Bridge Const. Servs. of Florida, Inc.*, 39 F. Supp. 3d 373, 387 (S.D.N.Y. 2014) ("[d]espite the existence of a bareboat charter, the owner of the vessel can be liable to third persons *if* the vessel was *not seaworthy at the inception of the charter.*") (citing *Torch, Inc. v. Alesich*, 148 F.3d 424, 427 (5th Cir.1998) (emphasis added).

Moreover, the Court notes that the Supreme Court has stated that "[t]he owner who attempts to escape his normal liability for the unseaworthiness of his vessel on the ground that he has temporarily been relieved of this obligation has the burden of establishing the facts which give rise to such relief." *Guzman v. Pichirilo*, 369 U.S. 698, 700 (1962).  The burden is "heavy" and the facts to establish include proof that a demise charter was created.  *Id.*

As to waiver of the implied warranty of seaworthiness, there is case law holding that a charterer may waive an implied warranty of seaworthiness when negotiating a charter. "The general rule is that a warranty of seaworthiness attaches to every charter. But the parties to a contract of private carriage are free to bargain as they please, and the warranty will not be implied where it is waived . . . in plain and unequivocal terms." *McAllister Lighterage Line v. Ins. Co.*, 244 F.2d 867, 871 (2d Cir. 1957) (internal quotation marks and citation omitted), *cert. denied*, 355 U.S. 871 (1957). *See also Texaco, Inc. v. Universal Marine, Inc.*, 400 F. Supp. 311, 322 (E.D. La. 1975) ("the warranty of seaworthiness is implied in every charter *unless expressly waived*") (emphasis added). *See also generally* G. Gilmore & C. Black, The Law of Admiralty, at 195-96 (1975) ("[T]he charter party is merely a contract, subject in general to all the rules and requirements of contract law . . . [S]ince most points of charter law involve construction of the charter the principles are much the same as those of ordinary contract law.").

In the case at bar, Speedboat and Jackson allege that by accepting the provision that the owner will deliver the Yacht in "ship shape" condition – "to the best of [Speedboat's and Jackson's] respective knowledge" that there are "no conditions, flaws, damages, or defects (latent or otherwise)" that "would render or cause the Yacht not to be in ship shape, sailable racing condition" – Rambler knowingly and plainly waived the implied covenant of seaworthiness as to latent defects of which Speedboat and Jackson were not aware prior to delivery of the vessel. Such a defense is "colorable" in light of the language of the Agreement. At this time, it remains to be proven whether Speedboat performed an adequate assessment of the Yacht's condition and/or knew about the defect to the keel fin prior to delivery. It is also unknown whether the defect to the keel fin was "latent" and/or should have been discovered by Speedboat and Jackson through due diligence. At this point, the Court

makes no finding on the merits of the movants' waiver argument but simply finds that the Thirteenth

Affirmative Defense is a "colorable" defense – *i.e.*, not "futile" as drafted.

Third, in their proposed "Fourteenth Affirmative Defense," Speedboat and Jackson allege

that the punitive damages and attorneys' fees provisions of CUTPA are preempted by federal

admiralty law.  It is well-established that "[w]here a conflict arises between a state statute and

judicially-established admiralty law, the state law must yield to admiralty law." *DeRossi v. Nat'l Loss*

*Mgmt.*, 328 F. Supp. 2d 283, 288 (D. Conn. 2004) (citing *Wilburn Boat Co. v. Fireman's Insurance*

*Co.*, 348 U.S. 310, 314 (1955)).

Under CUTPA, attorneys' fees and punitive damages are permitted upon proof of an unfair

trade practice.  Conn. Gen. Stat. § 42-110g.  An unfair trade practice is defined as one that "(1)

offends public policy, (2) is immoral, unethical, oppressive, or unscrupulous, or (3) causes

substantial injury to consumers." *DeRossi*, 328 F. Supp. 2d at 288 (citing *Willow Springs Condo.*

*Ass'n, Inc. v. Seventh BRT Dev. Corp.*, 245 Conn. 1, 43 (1998)).

In contrast, the Second Circuit announced "the general rule . . . that the award of fees and

expenses in admiralty actions is discretionary with the district judge upon a finding of bad faith." *Am.*

*Nat. Fire Ins. Co. v. Kenealy*, 72 F.3d 264, 270 (2d Cir. 1995) (quoting *Ingersoll Milling Mach. Co.*

v. M/V Bodena, 829 F.2d 293, 309 (2d Cir.1987), *cert. denied sub nom*., *J.E. Bernard & Co. v.*

*Ingersoll Milling Mach. Co.*, 484 U.S. 1042 (1988)). *See also DeRossi*, 328 F. Supp. 2d at 288-89

(federal admiralty law applies the "American Rule" to attorneys' fees, which holds "[t]he award of

fees and expenses . . .  discretionary with the district judge upon a finding of bad faith")  (citations

and internal quotation marks omitted).  Thus, "there is a federal admiralty rule prohibiting attorney's

fees in the broadest of terms which now must be followed instead of state law." *Id.* at 289.

14

With respect to punitive damages, such damages may be awarded in admiralty law "where the defendant's actions were intentional, deliberate, grossly negligent, or so wanton and reckless as to demonstrate a conscious disregard for the right of others." *Id.* (citing *Norwalk Cove Marina, Inc. v. S/V ODYSSEUS*, 90 F. Supp. 2d 190, 193 (D. Conn. 2000)).   It is clear that CUTPA applies a less stringent standard than admiralty law for the award of punitive damages. *DeRossi*, 328 F. Supp. 2d at 289.

In sum, because the damages provision of CUTPA regarding attorney's fees and punitive damages conflict with established admiralty law, they are preempted." *Id.; see also  Norwalk Cove Marina, Inc*., 90 F.Supp.2d at 192-93 (D. Conn.2000) (dismissing claim under CUTPA, concluding that the statute conflicts with admiralty law because it "allows for the award of attorneys fees and punitive damages without meeting the standards established for such awards in admiralty law"), *aff'd*, 64 F. App'x 319, 320 (2d Cir.2003).  It thus follows that Speedboat's and Jackson's last affirmative defense regarding preemption of CUTPA's provisions for "punitive damages and attorneys' fees" is not "futile."

Finally,  the Court notes that rather than opposing the proposed amendments, Rambler has, to date,  presented no opposition to the pending motion and thus no basis to meet the burden of proof regarding "futility." Under these circumstances, the Court finds no grounds under *Foman* to hold the three proposed affirmative defenses "futile."

## IV.  CONCLUSION

For all of the foregoing reasons, "Speedboat['s] and Jackson's Motion  for Leave to Amend Answer" [Doc. 75] to Rambler's Second Amended Counterclaims and Third-Party Complaint [Doc. 63] to assert additional affirmative defenses is GRANTED, as "justice so requires," Fed.R.Civ.P.

15(a)(2). Speedboat and Jackson must file their Amended Answers in the form set forth in the attachment to their motion (Doc. 75-1), on or before **February 10, 2017.**

It is SO ORDERED.

Signed: New Haven, Connecticut
         January 23, 2017

/s/Charles S. Haight, Jr.
CHARLES S. HAIGHT, JR.
Senior United States District Judge

16